UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID M. KITT,

     Plaintiff,

v.                                                  Case No.:  2:25-cv-780-SPC-KRH

OFFICER LEON, *et al.*,

     Defendants.

                                /

## OPINION AND ORDER

Before the Court are Defendant Michael McClure's Motion to Dismiss (Doc. 30), and Defendants Graig Brock, Stephen Gahrmann, Jarvis Williams, and Andry Leon's Motion to Dismiss (Doc. 37). *Pro se* Plaintiff David M. Kitt responded to Dr. McClure's Motion, but he did not respond to the other Motion. (Doc. 33).  For the reasons below, Dr. McClure's Motion is granted, and the remaining Defendants' Motion is granted in part and denied in part.

## Background

Kitt is a prisoner of the Florida Department of Corrections.  He claims that during his incarceration at Charlotte Correctional Institution (Charlotte CI), prison officials subjected him to an unlawful strip search, retaliated against him when he complained about it, and displayed deliberate indifference when he attempted to commit suicide.  (Doc. 1 at 4-8).  The Court

recounts the factual background as pled in the Complaint, which it must take as true to decide whether Kitt states a plausible claim.  *See Chandler v. Sec'y Fla. Dep't of Transp.*, 695 F.3d 1194, 1198-99 (11th Cir. 2012).

On the afternoon of March 26, 2025, Kitt was walking in front of the "education building" at Charlotte CI.  (Doc. 1 at 4).  Officer Leon screamed at him, "Hey inmate[,] where are you going[?]  Bring your fag[got] ass here."  (*Id.*)  Kitt said that he "work[ed] in the library," but Officer Leon cut him off, made a "sexual comment," and shoved him against the wall.  (*Id.*)  After "asking what [he had] on [him]," Officer Leon ordered Kitt to "strip" because he "wanted to see [Kitt's] asshole."  (*Id.*)  Kitt was forced to "pull down [his] pants and boxers" in front of "all the education classrooms."  (*Id.*)

At this point, Officer Williams—who had been standing "a distance away"—approached and instructed Kitt to "pull up [his] clothes."  (*Id.* at 5).  Kitt was handcuffed and escorted to the office of Captain Gahrmann.  (*Id.*)  Captain Gahrmann told Officers Leon and Williams to "lock his fag[got] ass up."  (*Id.*)  Kitt was taken to "medical" for a "pre-confinement physical."  (*Id.*)  He told the nurse that he wished to report a violation of the Prison Rape Elimination Act (PREA).[1]  (*Id.*)  Officer Leon asked, "What the fuck you just

---

[1] Through the PREA, Congress "directed the Attorney General to 'publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape.'" *DeJesus v. Lewis*, 14 F.4th 1182, 1193 n.8 (11th Cir. 2021) (quoting 34 U.S.C. § 30307(a)(1)).  "The rule established standards for investigating and responding to

said[?]" (*Id.*)  Officer Williams said, "This fag[got] ass fuckboy just put a PREA on you[,] Leon." (*Id.*)  Officer Leon "became angry" and said, "I have to excuse myself[,] this fag[got] is calling a fucking PREA on me." (*Id.*)

Officer Leon left and returned five minutes later with Captain Gahrmann. (*Id.*)  Captain Gahrmann asked Kitt whether he was "trying to report PREA . . . on my officer." (*Id.* at 6).  Kitt said that he "was in fact" making a "PREA allegation" against Officer Leon. (*Id.*)  Captain Gahrmann "aggressively" stated that the PREA "request" was "denied" because he had "just reviewed the camera" and "all [he saw] was you pulling your pants and boxers down." (*Id.*)  Captain Gahrmann also said that if Kitt pursued the PREA complaint, he would "falsify a . . . disciplinary report" against Kitt and "personally come deal with [Kitt] himself." (*Id.*)  Kitt ultimately "report[ed]" the alleged PREA violation on April 4, 2025. (*Id.*)

Less than two weeks later, on April 15, Kitt asked the "Classification Team" to protect him from retaliation by Officer Leon. (*Id.*)  Assistant Warden Brock denied the request, falsely claiming that Kitt could "not request protection against an officer." (*Id.*)

---

allegations of sexual abuse committed against prisoners." *Id.* (citing 28 C.F.R. §§ 115.61-68, 115.71-73).

3

On the morning of July 2, 2025, Officer Leon and Major Terrell[2] planted a cell phone in Kitt's cell. (*Id.* at 7; Doc. 11 at 1). Based on the alleged discovery of contraband, Kitt was sent to confinement. (Doc. 11 at 1). On the way there, Officer Leon said, "I've been waiting for this day[.] You thought you were going to report PREA on me and nothing would happen[.] Welcome to Charlotte CI." (*Id.* at 2).

Later that day, Kitt "became depressed due to the retaliation and attempted suicide by cutting [himself]." (Doc. 1 at 7). Because he lost a "massive amount" of blood, Kitt was taken to the hospital. (*Id.*) Upon his return, Dr. McClure placed him in a "confinement cell" where officers checked on him every 30 minutes and a nurse saw him every two hours. (*Id.*) According to Kitt, he should have been placed on "proper suicide watch," which would have entailed "suicide checks" every 15 minutes. (*Id.*; Doc. 33 at 2).

Kitt attempted suicide again on July 10 and July 14. (Doc. 1 at 7). After the latter attempt, Kitt was taken from his cell to a shower, where he was "left lying on the floor in bloody water . . . with [his] hands [cuffed] behind [his] back for at least" 90 minutes. (*Id.* at 7-8). An unnamed officer saw Kitt on the floor, removed the handcuffs, and took him back to his cell in a wheelchair. (*Id.* at

---

[2] Kitt does not name Major Terrell as a Defendant. (Doc. 1 at 2-3).

8).  Kitt told the officer and an unnamed sergeant that he "was still having thoughts of suicide and . . . needed to speak with mental health."  (*Id.*)

Dr. McClure was "called," but the Complaint does not allege what he was told.  (*Id.*)  He "refused" to place Kitt on "proper suicide watch," instead returning Kitt to the "confinement cell."  (*Id.* at 7-8).  Two minutes after arriving at the cell, Kitt again tried to commit suicide by "reopen[ing] [his] wound."  (*Id.* at 8).  This time, Kitt was "left . . . to die," receiving no "medical attention" for his injuries.  (*Id.*)

Based on these allegations, Kitt claims that (1) Officer Leon violated the Eighth Amendment during the strip search and retaliated against him in violation of the First Amendment for complaining about the incident; (2) Officer Williams violated the Eighth Amendment by failing to stop the unlawful strip search; (3) Captain Gahrmann violated the First Amendment by retaliating against Kitt for complaining about the strip search; (4) Assistant Warden Brock violated the First Amendment by failing to protect Kitt from retaliation by Officer Leon; and (5) Dr. McClure displayed deliberate indifference in violation of the Eighth Amendment when he declined to put Kitt on "proper suicide watch."  (*Id.* at 9-12; Doc. 33 at 2).

Kitt seeks $30,000 in damages, a declaration that Defendants violated his constitutional rights, and an injunction against "be[ing] sent back to Charlotte CI the rest of his incarceration."[3]  (Doc. 1 at 12-13).

## Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), courts must accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The preferential standard of review, however, does not let all pleadings adorned with facts survive to the next stage of litigation.  The Supreme Court has been clear on this point—a district court should dismiss a claim when a party does not plead facts that make the claim facially plausible.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a court can draw a reasonable inference, based on facts pled, that the opposing party is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  (citing *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)).  And a plaintiff must allege more than labels and conclusions amounting to a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555.

---

[3] Kitt currently resides at Dade Correctional Institution.  (Doc. 33-1).

To state a 42 U.S.C. § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cnty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

Kitt is representing himself in this action. Courts hold the pleadings of *pro se* litigants to a less stringent standard than pleadings drafted by attorneys. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998). But courts do not have a duty to "re-write" a *pro se* litigant's complaint to find a claim. *See Washington v. Dep't of Children & Families*, 256 F. App'x 326, 327 (11th Cir. 2007).

## Discussion

Dr. McClure argues that the Complaint fails to state a claim against him for deliberate indifference to serious medical needs. (Doc. 30 at 3-7). The remaining Defendants—Officers Leon and Williams, Captain Gahrmann, and Assistant Warden Brock—argue that they are entitled to qualified immunity, that the Eleventh Amendment bars any official-capacity claims against them,

and that Kitt's requests for damages, injunctive relief, and declaratory relief should be dismissed.  (Doc. 37 at 6-21).

## A.    Deliberate Indifference

Kitt alleges that Dr. McClure displayed deliberate indifference to his serious medical needs by refusing to place him on "proper suicide watch." (Doc. 1 at 8).  To state a deliberate-indifference claim, a plaintiff must show "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  "A prison official acted with deliberate indifference if he (1) had subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that amounts to subjective recklessness" as used in the criminal law.  *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024).  To establish "subjective recklessness," a plaintiff must show "that the [official] was actually, subjectively aware that his own conduct caused a substantial risk of serious harm." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024) (cleaned up).  "Mere negligence or medical malpractice is not sufficient." *Mandel v. Doe*, 888 F.2d 783, 787-88 (11th Cir. 1989).

Kitt fails to plausibly allege that Dr. McClure acted with deliberate indifference.  According to the Complaint, Kitt was taken to the hospital after his first suicide attempt.  (Doc. 1 at 7).  When he returned to Charlotte CI, Dr.

8

McClure placed him in a "confinement cell" where officers checked on him every 30 minutes and a nurse saw him every two hours. (*Id.*) Thus, Dr. McClure "responded reasonably to the risk" that Kitt would harm himself by ensuring that he was regularly monitored by officers and a nurse. *Wade*, 106 F.4th at 1262; *see also Salter v. Mitchell*, 711 F. App'x 530, 541 (11th Cir. 2017) (no deliberate indifference where prison official "monitored [suicidal inmate] in a manner consistent with the health watch protocol, every 15 to 30 minutes").

Kitt says that he should have been placed on "proper suicide watch," which would have entailed "suicide checks" every 15 minutes instead of every 30 minutes. (Doc. 1 at 7; Doc. 33 at 2). But "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's . . . course of treatment" is insufficient to state a constitutional violation. *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). The "decision to place [Kitt] on a less frequent watch or the failure to recognize that closer observation was needed suggests only negligence, if anything, and does not demonstrate the kind of deliberate conduct of callous indifference necessary to support a § 1983 claim." *Camps v. City of Warner Robins*, 822 F. Supp. 724, 732 (M.D. Ga. 1993) (cleaned up); *see also James v. Dixon*, No. 3:25-cv-1034-TKW-HTC, 2025 WL 4072377, at *5 n.10 (N.D. Fla. Dec. 22, 2025) ("[I]t is well-established that the

Constitution does not require constant observation of suicidal inmates . . . ." (collecting cases)).

Kitt also alleges that after his third suicide attempt, he was taken from his cell to a shower, where he was "left lying on the floor in bloody water . . . with [his] hands [cuffed] behind [his] back for at least" 90 minutes. (Doc. 1 at 7-8). After he returned to his cell in a wheelchair, Kitt allegedly attempted suicide again. (*Id.* at 8). This time, according to Kitt, he was "left . . . to die," receiving no "medical attention" for his injuries. (*Id.*) These allegations are troubling. But Kitt does not plead that Dr. McClure played any role in—or was even aware of—the failure to properly treat him after these suicide attempts. (*Id.* at 7-8). As the Court explained when it denied Kitt's request for a preliminary injunction, the Complaint "does not state what McClure knew or when he knew it." (Doc. 14 at 3). Without such allegations, Kitt fails to establish that Dr. McLure "engaged in conduct that amounts to subjective recklessness." *Stalley*, 124 F.4th at 1283. Therefore, the Eighth Amendment claim against Dr. McClure is dismissed.[4]

## B.   Qualified Immunity

The remaining Defendants—Officers Leon and Williams, Captain Gahrmann, and Assistant Warden Brock—argue that they are entitled to

---

[4] Because Kitt fails to state a claim against Dr. McClure, the Court need not address Dr. McClure's argument concerning exhaustion of administrative remedies.

10

qualified immunity. "Qualified immunity protects government officials from individual liability unless they violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Snorton v. Owens*, 808 F. App'x 814, 820 (11th Cir. 2020). An official invoking qualified immunity must first show he was acting within the scope of his discretionary authority. *Id.* The burden then shifts to the plaintiff to show: (1) the official violated a federal statutory or constitutional right; and (2) the unlawfulness of the official's conduct was clearly established at the time of the alleged violation. *Id.* at 820-21. Kitt does not dispute that Defendants were acting within the scope of their discretionary authority when they engaged in the conduct described in the Complaint.

"A federal right is 'clearly established' when 'at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he was doing is unlawful.'" *Anderson v. Vazquez*, 813 F. App'x 358, 360 (11th Cir. 2020) (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018)). "In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Wesby*, 132 S. Ct. at 589 (internal quotations omitted). To show that a legal principle is clearly established, a plaintiff must produce precedent "clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.*

11

### 1.   Officer Leon

At this stage of the litigation, Officer Leon is not entitled to qualified immunity.  First, Kitt plausibly alleges that Officer Leon violated the Eighth Amendment by ordering the strip search.  "Although prisoners have no Fourth Amendment right to be free from strip searches, the Eighth Amendment prohibits the unnecessary and wanton infliction of pain."  *Harris v. Ostrout*, 65 F.3d 912, 915-16 (11th Cir. 1995) (cleaned up).  Thus, a prisoner states an Eighth Amendment claim if he is subjected to a strip search that is "devoid of penological merit and imposed simply to inflict pain."  *Id.* at 916; *see also Moton v. Walker*, 545 F. App'x 856, 858-59 (11th Cir. 2013) (strip searches do not violate the Constitution "as long as [they] are conducted in a reasonable and non-abusive manner").

Kitt's allegations satisfy this standard.  He pleads that, as he was walking in front of the "education building," Officer Leon screamed at him, "Hey inmate[,] where are you going[?]  Bring your fag[got] ass here." (Doc. 1 at 4).  Kitt said that he "work[ed] in the library," but Officer Leon cut him off, made a "sexual comment," and shoved him against the wall. (*Id.*)  Officer Leon then ordered Kitt to "strip" because he "wanted to see [Kitt's] asshole." (*Id.*)  As a result, Kitt was forced to "pull down [his] pants and boxers" in front of "all the education classrooms." (*Id.*)  Accepted as true, these allegations support a reasonable inference that Officer Leon subjected Kitt to a public strip search

for his own sexual gratification.  Therefore, Kitt plausibly pleads that the search was "devoid of penological merit and imposed simply to inflict pain." *Harris*, 65 F.3d at 916; *see also Weeks v. Grady*, No. 1:18-cv-1373-SDG-JKL, 2019 WL 11278455, at *5 (N.D. Ga. Sept. 26, 2019) (prisoner stated "plausible claim that [a] strip search was unreasonable and/or abusive" based on allegations that the officer "made voyeuristic noises indicating sexual arousal" and "had no legitimate penological reason to have conducted the . . . search"), *adopted by* 2020 WL 6336186 (N.D. Ga. Oct. 29, 2020).

Kitt also states a First Amendment retaliation claim against Officer Leon.  An inmate may sue prison officials "who retaliate against him for making" complaints about "the conditions of his confinement."  *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008).  To prevail on a First Amendment retaliation claim, "the inmate must establish these elements:  (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech."  *Id.*

Kitt sufficiently pleads that he engaged in protected speech.  After the strip search, Kitt allegedly stated in Officer Leon's presence that he wished to report a PREA violation.  (Doc. 1 at 5).  Kitt later confirmed to Captain Gahrmann that he "was in fact" making a "PREA allegation" against Officer

Leon. (*Id.* at 6). And he made an official PREA complaint one week after the incident. (*Id.*) "It is well established that a prisoner exercises his First Amendment right" where, as here, "he complains about his conditions of confinement." *Smith v. Sec'y, Fla. Dep't of Corr.*, 358 F. App'x 60, 62 (11th Cir. 2009).

Kitt also pleads an adverse action. According to him, Officer Leon retaliated against him for making the PREA complaint by planting a cell phone in his cell and falsely accusing him of possessing contraband. (Doc. 1 at 7; Doc. 11 at 1). As a result, Kitt was sent to confinement. (Doc. 11 at 1). This conduct—making a false accusation that leads to placement in segregation— "would likely deter a person of ordinary firmness from" complaining about prison conditions. *Smith*, 532 F.3d at 1276. Indeed, the Eleventh Circuit has held that "placing an inmate in disciplinary/segregated confinement constitutes an adverse action for purposes of a First Amendment retaliation claim." *Williams v. Radford*, 64 F.4th 1185, 1193 (11th Cir. 2023).

Defendants contend that Kitt did not suffer an adverse action because, even after his placement in confinement, he continued to file grievances about the strip search. (Doc. 37 at 16). But the Eleventh Circuit does not require retaliation plaintiffs to "show that they were actually chilled in the exercise of their First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1251 (11th Cir. 2005), *abrogated in part on other grounds by Pearson v. Callahan*, 555 U.S.

223 (2009). As the court explained, "it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* (cleaned up). Instead, the test is "objective," asking only whether "the allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Huggins v. Sch. Dist. of Manatee Cnty.*, 151 F.4th 1268, 1281 (11th Cir. 2025) (cleaned up). For the reasons just explained, Kitt satisfies this standard.

Lastly, Kitt pleads "a causal relationship between the retaliatory action and the protected speech." *Smith*, 532 F.3d at 1276. "To establish causation, the plaintiff must show that the defendant was subjectively motivated to discipline the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (cleaned up). After planting the cell phone, Officer Leon escorted Kitt to confinement. (Doc. 11 at 1). On the way there, Officer Leon allegedly said, "I've been waiting for this day[.] You thought you were going to report PREA on me and nothing would happen[.] Welcome to Charlotte CI." (*Id.* at 2). These allegations plausibly suggest that Officer Leon "discipline[d] [Kitt] for exercising his First Amendment right[]" to complain about alleged sexual abuse. *Moton*, 631 F.3d at 1341.

For the reasons explained above, Kitt adequately alleges that Officer Leon violated his rights under the First and Eighth Amendments. So the

15

question is whether the unlawfulness of Officer Leon's actions was clearly established at the time.  It was.

When Officer Leon ordered the strip search, it was clearly established that the Eighth Amendment forbids strip searches "devoid of penological merit and imposed simply to inflict pain." *Harris*, 65 F.3d at 916; *see also Moton*, 545 F. App'x at 858-59 (strip searches do not violate the constitution "as long as [they] are conducted in a reasonable and non-abusive manner").  As noted above, the Complaint supports a plausible inference that Officer Leon subjected Kitt to a public strip search for his own sexual gratification.  "[T]he law was sufficiently clear that every reasonable official would understand that what [Officer Leon allegedly did] is unlawful." *Anderson*, 813 F. App'x at 360.

The same is true of the retaliation claim.  At the time of the allegedly retaliatory conduct, it was clearly established that "[t]he First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003).  It was also clearly established that prison officials cannot "retaliate against [an inmate] for making" complaints about "the conditions of his confinement." *Smith*, 532 F.3d at 1276.  These cases put Officer Leon on notice that his

16

alleged conduct—falsely accusing an inmate of possessing contraband in retaliation for a PREA complaint—violated the First Amendment.[5]

### 2.    Officer Williams

Officer Williams is entitled to qualified immunity. According to Kitt, Officer Williams violated the Eighth Amendment by failing to intervene in the unlawful strip search. (Doc. 1 at 10). An officer "can be liable for failing to intervene when another officer uses excessive force." *Priester v. City of Riviera Beach*, 208 F.3d 919, 924 (11th Cir. 2000). But the Eleventh Circuit "does not recognize a duty to intervene in constitutional violations which occur outside of the excessive-force context." *Rivera v. Marin R*, No. 23-cv-62034, 2024 WL 2931030, at *4 (S.D. Fla. June 11, 2024) (collecting cases). Thus, Kitt cannot state a claim against Officer Williams for failing to intervene in the strip search.[6] *See Gilmore v. Milton*, No. 6:18-cv-115, 2020 WL 7249627, at *8 (S.D.

---

[5] It does not appear that Kitt intends to assert an excessive-force claim against Officer Leon. Regardless, any such claim would fail. According to the Complaint, Officer Leon shoved Kitt against the wall before conducting the strip search. (Doc. 1 at 4). Kitt does not allege that he sustained any injury from the shove. This use of force "was *de minimis*" and cannot support an excessive-force claim. *Smith v. Sec'y, Dep't of Corr.*, 524 F. App'x 511, 514 (11th Cir. 2013) (no excessive force where defendant "twist[ed] [plaintiff's] arm and press[ed] him against the wall").

[6] Kitt appears to contend that Officer Williams violated the Eighth Amendment by failing to "report" his "PREA allegation" on March 26, 2025. (Doc. 1 at 10). According to the Complaint, however, Kitt himself made an official PREA "report" on April 4, 2025. (*Id.* at 6). "There is no allegation that [Kitt] was harmed in any way as a result of any delay in reporting the incident." *Crenshaw v. Lewis*, No. 8:14-cv-1941-JDW-AEP, 2016 WL 521531, at *3 (M.D. Fla. Feb. 5, 2016). Thus, Kitt cannot state an Eighth Amendment claim based on Officer Williams's failure to report the PREA allegation.

Ga. Dec. 9, 2020) (noting that the Eleventh Circuit has not "establishe[d] that an officer has a duty to intervene in an allegedly unlawful strip search where no excessive force is present").

### 3.    Captain Gahrmann

At this stage of the litigation, Captain Gahrmann is not entitled to qualified immunity. Kitt plausibly alleges that Captain Gahrmann retaliated against him for complaining about the strip search. According to the Complaint, Kitt told Captain Gahrmann that he "was in fact" making a "PREA allegation" against Officer Leon. (Doc. 1 at 6). That qualifies as protected activity. *See Smith*, 358 F. App'x at 62. Next, Captain Gahrmann said that if Kitt pursued the PREA complaint, he would "falsify a . . . disciplinary report" against Kitt and "personally come deal with [Kitt] himself." (Doc. 1 at 6). A threat to falsify disciplinary charges would be "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Pittman v. Tucker*, 213 F. App'x 867, 871 (11th Cir. 2007). Finally, Kitt's allegations suggest that Captain Gahrmann was "subjectively motivated to discipline [him] for exercising his First Amendment rights." *Moton*, 631 F.3d at 1341.

The unlawfulness of this conduct was clearly established at the time. As noted above, prison officials cannot "retaliate against [an inmate] for making" complaints about "the conditions of his confinement." *Smith*, 532 F.3d at 1276; *see also Farrow*, 320 F.3d at 1248 ("The First Amendment forbids prison

officials from retaliating against prisoners for exercising the right of free speech."). This caselaw put Captain Gahrmann on notice that his alleged conduct violated the First Amendment.

### 4. Assistant Warden Brock

Assistant Warden Brock is entitled to qualified immunity. According to the Complaint, Assistant Warden Brock failed to intervene to prevent Officer Leon from retaliating against Kitt. (Doc. 1 at 6). As explained above, however, the Eleventh Circuit "does not recognize a duty to intervene in constitutional violations which occur outside of the excessive-force context." *Rivera*, 2024 WL 2931030, at *4 (collecting cases). Therefore, Kitt cannot state a failure-to-intervene claim against Assistant Warden Brock. *See Saunders v. Neighborhood Rest. Partners, LLC*, No. 8:25-cv-985-KKM-NHA, 2025 WL 4693713, at *9 (M.D. Fla. May 1, 2025) (holding that failure to prevent "targeted retaliation" fell "outside of the limited circumstances, namely, a claim for excessive force, in which the Eleventh Circuit recognizes a duty to intervene").

### C. Eleventh Amendment Immunity

Defendants argue that the Eleventh Amendment bars any official-capacity claims against them. (Doc. 37 at 8). It is unclear whether Kitt sues Defendants in their official capacities. But the Court sees no harm in clarifying that the Eleventh Amendment bars him from doing so here.

19

The Eleventh Amendment states, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent an abrogation of immunity by Congress or a waiver of immunity by the state being sued, the Eleventh Amendment is an absolute bar to suit by an individual against a state or its agencies in federal court. *See Edelman v. Jordan*, 415 U.S. 651, 662 (1974).

"When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Id.* at 663. "Thus, the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* Congress has not abrogated Florida's immunity and Florida has not waived its Eleventh Amendment immunity. *See Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990). Therefore, Kitt cannot sue Defendants for monetary damages in their official capacities.

### D.    Damages, Injunctive Relief, and Declaratory Relief

Defendants argue that Kitt "fails to demonstrate that he qualifies for damages, injunctive relief, or declaratory relief." (Doc. 37 at 19). Rule 12(b)(6)

"is designed to eliminate counts or complaints that fail to state a claim upon which relief can be granted." *Pace v. Platt*, 228 F. Supp. 2d 1332, 1334 (N.D. Fla. 2002). A prayer for relief is not a "claim" within the meaning of Federal Rule of Civil Procedure 8(a) and thus is not subject to dismissal under Rule 12(b)(6). The availability of particular remedies is best left for a later stage of the case, after the parties have conducted discovery. *See Richardson v. Navy Fed. Credit Union*, No. 1:24-cv-01575-VMC, 2026 WL 974844, at *5 (N.D. Ga. Mar. 19, 2026) ("Plaintiff's request for declaratory relief is not a claim subject to dismissal under [Rule] 12(b)(6)."); *Williams v. Red Mountain Retail, Inc.*, No. 2:24-cv-590-GMB, 2024 WL 3543427, at *2 (N.D. Ala. July 25, 2024) ("[Defendant's] arguments about the damages alleged in the complaint are similarly premature. The law permits the pleading of such damages, even if they may not ultimately be recovered."); *Metallo v. Orlando Utilities Comm'n*, No. 6:14-cv-1975-PGB-KRS, 2015 WL 5124866, at *4 (M.D. Fla. Sept. 1, 2015) ("[I]njunctive relief is not a claim in and of itself that is subject to scrutiny under Rule 12(b)(6) . . . .").

### E.   Leave to Amend

Generally, a *pro se* plaintiff must receive at least one opportunity to amend his complaint if he might be able to state a claim by doing so before the court dismisses the complaint with prejudice. *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291-92 (11th Cir. 2018). But the court need not allow

21

amendment in the event of undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Any amendment of the failure-to-intervene claims against Officer Williams and Assistant Warden Brock would be futile. As explained above, those claims fail as a matter of law because the duty to intervene does not apply outside the excessive-force context. Accordingly, the claims against Officer Williams and Assistant Warden Brock are dismissed with prejudice. Kitt fails to state a deliberate-indifference claim against Dr. McClure, but he might be able to do so in an amended complaint. Thus, the claim against Dr. McClure is dismissed without prejudice and with leave to amend.

Accordingly, it is

**ORDERED:**

1. Defendant Michael McClure's Motion to Dismiss (Doc. 30) is **GRANTED**.

2. Defendants Graig Brock, Stephen Gahrmann, Jarvis Williams, and Andry Leon's Motion to Dismiss (Doc. 37) is **GRANTED in part and DENIED in part**.

3. The claims against Officer Williams and Assistant Warden Brock are **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate Officer Williams and Assistant Warden Brock as parties to this case.

4.    The claim against Dr. McClure is **DISMISSED without prejudice**.

5.    Any official-capacity claims are **DISMISSED with prejudice**.

6.    Within **21 days** of this Opinion and Order, Kitt must either (1) file an amended complaint that addresses the deficiencies in the claim against Dr. McClure, or (2) file a notice informing the Court that he wishes to proceed only on the First and Eighth Amendment claims against Officer Leon and the First Amendment claim against Captain Gahrmann.  **Failure to timely comply with this directive may result in the dismissal of this case for lack of prosecution.**

7.    The Clerk is **DIRECTED** to send Kitt a copy of the standard prisoner civil rights complaint form.

**DONE** and **ORDERED** in Fort Myers, Florida on June 3, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA:  TpaP-2
Copies:  All Parties of Record

23